## Case No. 10,633.

### OWENS v. ADAMS.

[1 Brock. 72.] [1]

Circuit Court, D. Virginia. Nov. Term, 1808.

EVIDENCE — BOOKS OF ACCOUNT KEPT BY CLERK NOW DECEASED.

An account taken from the books of a merchant's clerk, who is dead, is not admissible evidence in an action on account, unless such books were the original books of entry, and kept by a clerk who could have proved, if living, the delivery of the goods: and his hand-writing must also be proved. Where such an account is offered, collateral testimony, as, for example, a letter from the defendants, acknowledging in general terms a balance due the plaintiffs, will not be admitted to verify an account which would be otherwise inadmissible. It must apply to the account itself, and not merely to general transactions, which have no tendency to verify the particular account produced, but would equally support a claim for a small or large amount.

[Cited in Jeffrey v. Schlasinger, Case No. 7,-253a.]

(The record in this case having been lost or mislaid, the reporter is precluded from furnishing a statement of the facts elicited in the cause. As the following opinion, however, discusses a very important question of evidence, he has thought it advisable to insert it, especially as the question is purely a legal one.)

MARSHALL, Circuit Justice. In this case the plaintiff, who is a London merchant, offered in evidence an account taken from his books, which commenced in the year 1784, connected with a receipt signed "Hunt & Adams," for a box delivered in January, 1785, and a letter from the same individuals, dated in June, 1790, mentioning a remittance then made in snuff, and acknowledging a further balance to remain due in terms which imply that balance to have been by no means inconsiderable. The books from which the account was taken, are proved to have been kept by a clerk who is since dead; and the account is proved to be an exact copy from those books. Another witness swears that he has compared the account with the original entries, and that it corresponds with them, but he does not depose to the handwriting in which those original entries are made.

The plaintiff contends, that under these circumstances, the account may be submitted to the consideration of the jury. This question depends entirely on the law of evidence, and as no legislative provision has been made for the case, it is supposed to be governed by the rules of the common law. The common law on this subject is believed to have been laid

down with perfect accuracy by Mr. Blackstone, in his Commentaries (volume 3, p. 368). "So, too," says that author, "books of account, or shop-books, are not allowed of themselves to be given in evidence for the owner; but a servant who made the entry may have recourse to them to refresh his memory, and if such servant, who was accustomed to make those entries, be dead, and his hand be proved, the book may be given in evidence." This apparently relates to original entries, not only because the principle, that the best legal evidence which the nature of the thing affords must be produced, is directly recognised by Blackstone, while speaking on the same subject, but because the expression that "the servant who made the entries might refer to the book to refresh his memory," plainly designates such a servant as could have proved the delivery of the goods. The counsel for the plaintiff has not controverted this principle of law, but has contended that the clerk who is dead, in this case, was the person by whom the original entries were made. Privately, I am inclined to believe the fact to have been so, but I do not feel myself at liberty to deliver that opinion in this place. Exact uniformity of decision ought to be observed; and when principles are departed from, those substituted in their place ought to be so strongly marked, as not afterwards to be misunderstood. In this case, the term "books" is used; and if that term might be understood to mean all the books, or the original books of entry in this case, it ought so to be understood in every case, and then the rule would be completely changed. Neither do I think the form of the entries, evidence that the original books were kept by the clerk who is dead. This essential fact, on which the admissibility of the account depends, ought to be plainly stated by the party who would avail himself of that account.[2]

[2] "The evidence of an entry," says Mr. Starkie, in his treatise of the Law of Evidence (volume 1, p. 72), "has in some instances been admitted where the party had the peculiar means of knowledge, and made it in the course of a particular routine of business, at the same time, or nearly so, with the supposed act." "In Earl of Torrington's Case, 1 Salk. 285, 2 Ld. Raym. 873, the evidence was, that according to the usual course of the plaintiff's dealings, the draymen came every night to the clerk of the brewhouse, and gave him an account of the beer delivered out, which he set down in a book, to which the draymen set their hands; and that the drayman was dead, and that the entry was in his hand-writing; and it was held to be good evidence of a delivery. Here, the admissibility of the entry did not depend upon the mere credit given to the drayman, so much as upon the consideration that the entry was made in the usual course of business, and was contemporaneous with the supposed delivery. Where, on the contrary (Clerk v. Bedford, Bull. N. P. p. 282), the plaintiff, to prove a delivery, produced a book which belonged to his cooper, who was dead, but his name set to several articles, as wine delivered to the defendant, the evidence was rejected by Lord Raymond. who distinguished it from Earl of Torrington's Case, because there, the witness saw the drayman sign the book every night. In these cases it is ob-

Neither do I think the collateral testimony which has been offered, can help the case. That testimony shows the existence of a debt, but not its amount. The plaintiff can only be admitted to establish its amount by legal evidence; and to make his books legal evidence, he ought to prove, that the clerk who made the original entries is dead. It would be as dangerous to admit a plaintiff to establish the amount of a debt by his books, as to prove the existence of the debt by the same evidence. I therefore felt no doubt when this case was first mentioned, in determining the testimony to be inadmissible, if it was a case of the first impression in this court, and if I could draw it out of the case of Lewis v. Norton [1 Wash. (Va.) 100]. A case was referred to as having established the admissibility of such testimony; but on a reference to the record, it appeared that the books from which the copy had been taken, were the original books, or the books in which the original entries had been made, and the clerk who kept them was dead. The terms used were considered as synonymous with shop or day-books; and that decision will be adhered to. I had much more difficulty in getting over the case of Lewis v. Norton, and was at first disposed, under the authority of that case, to permit the present verdict to stand, although directly against

servable that, in the one, the whole rested entirely on the veracity of the party who made the entry; in the other, a presumption as to its truth arose from the time of the entry, and the fact, that it was made in the usual and ordinary course of business." And again, at page 315 of the same volume, Mr. Starkie says: "In the case of Pitman v. Maddox, 1 Ld. Raym. 732, 2 Salk. 690, in an action upon a tailor's bill, a shop-book was produced, written by one of the plaintiff's servants, who was dead; and upon proof of the death of the servant, and that he used to make such entries, it was allowed to be good evidence of the delivery of the goods. From these cases it may be inferred that some evidence ought to be given to show that such entries were made in the usual routine of business; but perhaps, it may not be necessary, as in Earl of Torrington's Case, to prove the signature by one who saw it written." In Welsh v. Barrett. 15 Mass. 380, the book of a deceased messenger of a bank in which, in the course of his official duty, he entered memoranda of demands on the makers, and notices to the endorsers, of notes left in the bank for collection, was admitted as evidence of a demand on the maker, and notice to the endorser, in an action on a note thus left for collection, the memorandum being first proved to be in his hand-writing. Chief Justice Parker said, that this was analagous to the case of a deceased merchant's clerk, and there could be no good reason why proof of entries made by the messenger, in the case at bar, should not be received as evidence in a case proper for the admission of a merchant's books as evidence. This case was cited and approved by the supreme court, in Nicholls v. Webb, 8 Wheat. [21 U. S.] 326; 5 Pet. Cond. R. 451; and the court held that, a fortiori, the books of a notary public. (who is a public officer) which are proved to have been regularly kept, are admissible in evidence after his decease. to prove a demand of payment, and notice of non-payment of a promissory note. In conformity with these decisions is the case of Halliday v. Martinet, 20 Johns. 168.

my own opinion. But, upon reflection, I think myself obliged to change that opinion, and to set aside this verdict. I feel no doubt concerning the law of the case. I have no doubt but that the amount of the debt can only be established by testimony, which is in itself legal; and that such collateral testimony as will make an account, otherwise inadmissible, legal testimony, must apply to the account itself, and not merely to general transactions, which have no tendency to verify the particular account produced, but would equally support a claim for £100 or £1000. I think it of most dangerous tendency to admit such evidence; and, as there is a difference between decisions which merely respect the rules of evidence, and those which affect rights, and also between a single decision subject to revision, and a series of decisions, which may be considered as fixing the law of the land, and as it is, in my opinion, of much importance that exact uniformity should be observed in decisions on that testimony which will be required by the court, in order to support a claim on account, which is but to be obtained by an inflexible observance of the rules established by law, and not by deviating occasionally from them, on circumstances perpetually varying in slight, unimportant degrees, I think it right to adhere to the safe and well-understood rules of the common law, and shall therefore direct a new trial in this case.

The following order was accordingly made: "On the motion of the defendant by his attorney, and for reasons appearing to the court, it is ordered that the judgment upon the verdict of the jury rendered in this case on Monday, the 23d ultimo, be set aside: and that a new trial be had therein at the next court; and general commissions are awarded the parties to examine and take the depositions of their witnesses in this cause residing in Great Britain: which commissions are to be taken before any notary public duly authorized, each party giving unto the other reasonable notice of the time and place of executing the same.